UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN ELLIS,<br><br>        Plaintiff,<br><br>   v.<br><br>LYN BARACEROS, et al.,<br><br>        Defendants. | No. 2:16-cv-1083 JAM KJN P<br><br><br><u>ORDER</u> |

Plaintiff is a state prisoner, proceeding pro se. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, and has requested leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915. This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1).

I.    <u>Request to Proceed In Forma Pauperis</u>

Plaintiff has requested leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915. (ECF No. 2.)

Plaintiff submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a). Accordingly, the request to proceed in forma pauperis is granted.

Plaintiff is required to pay the statutory filing fee of $350.00 for this action. 28 U.S.C. §§ 1914(a), 1915(b)(1). By this order, plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). By separate order, the court will direct the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and

1  forward it to the Clerk of the Court.  Thereafter, plaintiff will be obligated for monthly payments
2  of twenty percent of the preceding month's income credited to plaintiff's prison trust account.
3  These payments will be forwarded by the appropriate agency to the Clerk of the Court each time
4  the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full.  28 U.S.C.
5  § 1915(b)(2).

6  II.    Motion to Amend the Complaint

7  Plaintiff filed a motion to amend the complaint on August 9, 2016 (ECF No. 6) and an
8  Amended Complaint on September 6, 2016[1] (ECF No. 8).  Plaintiff may amend his complaint
9  once as a matter of right.  See Fed. R. Civ. P. 15(a)(1)(A).  Thus, the Court accepts plaintiff's
10 amended complaint for filing on September 6, 2016.  Accordingly, plaintiff's motion for leave to
11 amend his complaint is denied as moot.

12 III.   Screening Standards

13 The court is required to screen complaints brought by prisoners seeking relief against a
14 governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The
15 court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally
16 "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek
17 monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).
18 A claim is legally frivolous when it lacks an arguable basis either in law or in fact.  Neitzke v.
19 Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir.
20 1984).  The court may, therefore, dismiss a claim as frivolous when it is based on an indisputably
21 meritless legal theory or where the factual contentions are clearly baseless.  Neitzke, 490 U.S. at
22 327.  The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an
23 arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989),
24 superseded by statute as stated in Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) ("[A]
25 judge may dismiss [in forma pauperis] claims which are based on indisputably meritless legal
26 theories or whose factual contentions are clearly baseless."); Franklin, 745 F.2d at 1227.

27
28  ---
[1] Plaintiff amended his complaint to correct the name of defendant Lyn Baraceros to Lami P. Baraceros.  (ECF No. 6 at 1, No. 8 at 23.)

2

A complaint, or portion thereof, should only be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hosp. Bldg. Co. v. Rex Hosp. Trs., 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor, Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

IV.   Amended Complaint

The amended complaint states that plaintiff, who is a fifty-five year-old paraplegic, suffers from multiple medical problems, including degenerative joint disorder, which causes him chronic pain. (ECF No. 8 at 8.) Since February 2014, plaintiff was prescribed pain medication to combat his chronic pain and to increase his ability to perform daily physical activities. (Id.) Following plaintiff's transfer to the California Medical Facility (CMF), defendant Dr. Francis Ko, M.D., a physician at CMF, continued plaintiff's chronic pain medication on August 18, 2014. (Id. at 9.) The amended complaint alleges that, on September 10, 2014, defendant Lami P. Baraceros, plaintiff's medication nurse at CMF, completed a CDCR Form 128C Medication Management Chrono stating that plaintiff refused to "come out for meds." (Id.) Thereafter, plaintiff was warned that if he continued to refuse his medication, his prescription would be discontinued, and that if he felt he did not need medication every day, he should request a "taken as needed" (prn) prescription. (Id.) On September 14, 2014, plaintiff submitted a Health Care Service Request Form 7362 requesting that his pain medication be prescribed as prn "taken as needed." (Id.) Plaintiff was ducated to Dr. Ko on September 18, 2014, to discuss Baraceros' September 10, 2014 Form 128C. (Id.) On September 26, 2014, plaintiff's chronic pain medication (morphine) prescription was changed to prn, and, upon his request, was reduced from three times daily to once daily. (Id.)

////

Later, plaintiff asked Baraceros if she had written a Form 128C against him, and she responded, "No! I didn't write it." (Id.) Plaintiff then showed Baraceros the Form 128C she had written and told Baraceros that he did not trust her. (Id. at 9-10.) Baraceros told plaintiff to "take his meds and go" and that she would have his cell searched. (Id. at 10.) Plaintiff alleges that, after this altercation, Baraceros "began carrying out a series of unprofessional treatment, attitude, and behaviors towards plaintiff (different than how she treated other inmates)," which included denying plaintiff his chronic pain medication "by deliberately passing up his cell during door-to-door medication pass; ignoring [plaintiff's] request for medical sick call slips (7362 Forms); and, displaying an open dislike towards [plaintiff] in front of both officers and inmates." (Id.) When plaintiff told Baraceros he intended to file a grievance against her for unprofessional nursing performance, she "tossed" him two 7362 Forms and began a "campaign of harassments" against him. (Id.)

On April 14, 2015, plaintiff filed a grievance against Baraceros, which was "heard" and "finalized" "to no avail." (Id. at 11.) Plaintiff alleges that Baraceros retaliated against him by falsely accusing him of his hiding his medication, which resulted in his cell being searched. (Id.) Plaintiff "was forced to skip taking his medication" on some days when Baraceros worked to avoid further harassment and retaliation. (Id.) When Baraceros "continued with her retaliatory acts" toward plaintiff, plaintiff filed a complaint against Baraceros for retaliation and harassment. (Id.)

Thereafter, on July 23, 2015, plaintiff told Baraceros that she "just will not learn" and that "writing her up is futile," upon which Baraceros "slammed" plaintiff's medication cup on the medical cart counter. (Id.) Baraceros then told plaintiff that she would have his pain medication stopped. (Id.) When plaintiff stated that only his doctor could stop his pain medication, Baraceros responded, "I was a Supervising Nurse, I can have your pain medication stopped, permanently." (Id.) When Plaintiff reiterated that only his primary care doctor could stop his medication, Baraceros stated, "We'll see!" (Id. at 12.)

On August 18, 2015, defendant Narinda Saukhla, M.D., a primary care physician at CMF, changed plaintiff's morphine medication from prn "taken as needed" to "taken every evening,"

4

1  without plaintiff's knowledge.  (Id.)   When plaintiff missed taking his medication, Baraceros
2  wrote another Form 128C.  (Id.)  Plaintiff alleges that he would not have "missed" his medication
3  had his prescription not been changed from prn "as needed."  (Id. at 12-13.)  Plaintiff alleges that
4  Baraceros "secretly and deceptively" documented plaintiff as refusing his medication in an
5  attempt to have his medication discontinued permanently.  (Id. at 13.)  The amended complaint
6  further alleges that, on September 23, 2015, Baraceros told a correctional officer to watch only
7  plaintiff (and not other inmates) as he took his medication.  (Id.)

8      On October 23, 2015, Dr. Ko discontinued plaintiff's chronic pain medication per
9  Baraceros' October 21, 2015 Form 128C and e-mail to Dr. Ko documenting plaintiff's failure to
10  take his medication.  (Id.)  On October 26, 2015, when plaintiff went to the pill line to request his
11  medication, Baraceros told him that she had his medication discontinued.  (Id.)

12      On October 27, 2015, plaintiff saw Dr. Ko who reported that Baraceros told him that
13  plaintiff had missed two weeks of medication, diverted his medication, and possibly engaged in
14  illegal drug use, and that Baraceros recommended that plaintiff's medication be discontinued.
15  (Id.at 13-14.)  Plaintiff explained that Baraceros' accusations were false, that they had a long
16  history of not getting along, and that Baraceros was retaliating against plaintiff by interfering with
17  his pain medication.  (Id.at 14.)  That very same day, Dr. Ko renewed plaintiff's pain medication
18  prescription to be taken every evening.  (Id.)  Baraceros did not tell plaintiff about the renewal
19  until the next day, October 28, 2015.  (Id.)  On October 29, 2015, plaintiff missed his medication
20  because he was asleep, and his medication was discontinued that day.  (Id. at 14-15.)

21      As a result of the discontinuance, plaintiff filed several CDCR 22 Forms with various
22  supervising nurses, stating that Baraceros was retaliating against him by trying to have his chronic
23  pain medication prescription discontinued permanently and by making false accusations against
24  plaintiff to Dr. Ko.  (Id. at 15.)

25      On October 31, 2015, plaintiff submitted a Health Care Service Request Form 7362
26  inquiring why Dr. Ko discontinued plaintiff's chronic pain medication on October 29, 2015, after
27  having renewed it just two days earlier.  (Id.)   On November 9, 2015, Dr. Ko explained to
28  plaintiff that his pain medication was discontinued permanently for several reasons, including a

5

1   Form 128C documenting plaintiff's refusal to provide a urine sample per Dr. Ko's October 27,

2   2015 request[2]; plaintiff's violation of the February 14, 2014 pain contract; and Baracero's

3   October 29, 2015 e-mail to Dr. Ko recommending that plaintiff's chronic pain medication be

4   discontinued. (Id.) Plaintiff alleges that the Form 128C documenting his failure to take a urine

5   test and the pain contract were "bogus" or non-existent. (Id.) Dr. Ko told plaintiff that he was

6   upholding his decision to discontinue plaintiff's chronic pain medication permanently. (Id.)

7       On December 29, 2015, plaintiff submitted a Form 7362, stating that since discontinuation

8   of his pain medication, he has experienced "serious pain" that has affected his daily activities.

9   (Id.) Plaintiff submitted another Form 7362 on January 27, 2016, complaining that since the

10  discontinuation of his chronic pain medication on October 23, 2015, and October 29, 2015, it has

11  been difficult for him to execute fully his work requirements due to serious chronic pain in his

12  back and shoulders. (Id.) Plaintiff stated that he had to miss four days of work because of the

13  pain and requested that he be placed on chronic pain medication. (Id.)

14      On February 2, 2016, plaintiff filed a grievance because he had not been ducated to a

15  doctor regarding his 7362 Forms. (Id.) On February 9, 2016, plaintiff was brought to the B-1

16  emergency clinic to receive treatment for his serious chronic pain. (Id. at 16-17.) Dr. Osman

17  prescribed plaintiff pain medication and made him an appointment with a different primary care

18  doctor. (Id. at 17.) The pain management team reinstated plaintiff's chronic pain medication and

19  granted plaintiff's grievance, and, on March 1, 2016, plaintiff was prescribed morphine, prn

20  "taken as needed," once daily at bedtime. (Id.)

21  V.    Analysis

22      A.  First Amendment Claims Against Defendant Baraceros

23      "Prisoners have a First Amendment right to file grievances against prison officials and to

24  be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012)

25  (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)). Allegations of retaliation against

26  a prisoner's First Amendment rights to speech or to petition the government may support a

27  ---

28  [2] Plaintiff told Dr. Ko that nobody came to collect his urine until November 9, 2015. (ECF No. 8 at 16.)

section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 531-32 (9th Cir. 1985); Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995).

To state a viable First Amendment retaliation claim, a prisoner must allege five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

Plaintiff alleges that defendant Baraceros retaliated against plaintiff's expressed intent to exercise his First Amendment right to file grievances. (ECF No. 8 at 18-19.) Plaintiff claims that Baraceros retaliated against plaintiff by: "continuously" making false accusations that plaintiff hid his medication, which resulted in the search of "his cell, person, and property"; refusing plaintiff his medication "by constantly passing up his cell during door-to-door medication pass"; refusing plaintiff sick call slips; "secretly" telling staff to watch only plaintiff take his medication; and deceiving plaintiff about his prescription, which resulted in the permanent discontinuation of his pain medication. (Id.)

While it appears that plaintiff may be able to state a viable First Amendment claim against Baraceros, plaintiff has failed to allege that Baraceros' actions were not in furtherance of legitimate correctional roles. The court will, however, grant leave to file a second amended complaint. Plaintiff is cautioned that any allegations regarding Baracero's pre-grievance conduct fail to state a claim for retaliation because they preceded plaintiff's protected conduct.

B. Eighth Amendment Claims Against Defendants Baraceros, Dr. Ko, and Dr. Saukhla

The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 319 (1986); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). In order to prevail on a claim of cruel and unusual punishment, a prisoner must allege and prove that objectively he suffered a sufficiently serious deprivation and that subjectively prison officials acted with deliberate indifference in allowing or causing the deprivation to occur. Wilson v. Seiter, 501 U.S. 294, 298-99 (1991).

////

Where a prisoner's Eighth Amendment claims arise in the context of medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106. An Eighth Amendment medical claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974 F.2d at 1059 (quoting Estelle, 429 U.S. at 104). Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." Id. at 1059-60. By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

If a prisoner establishes the existence of a serious medical need, he must then show that prison officials responded to the serious medical need with deliberate indifference. Id. at 834. In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or may be shown by the way in which prison officials provide medical care. Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988). Before it can be said that a prisoner's civil rights have been abridged with regard to medical care, however, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06). Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" Farmer, 511 U.S. at 835 (quoting Whitley, 475 U.S. at 319). Delays in providing medical care may manifest deliberate indifference. Estelle, 429 U.S. at 104-05. To establish a claim of deliberate indifference arising from delay in providing care, a plaintiff must show that the delay was harmful. See Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994);

McGuckin, 974 F.2d at 1059.  "A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs."  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

Finally, mere differences of opinion between a prisoner and prison medical staff as to proper medical care do not give rise to a § 1983 claim.  Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004) (quoting Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

Plaintiff alleges that his medical condition constitutes a serious medical need that affects his daily activities, and that defendants intentionally denied, interfered, and delayed his access to medical care and treatment, causing him "severe pain and discomfort."  (ECF No. 8 at 19.)  Plaintiff alleges that defendants "have acted intentionally" and "with knowledge of plaintiff's suffering and the risk of serious harm that resulted from their actions or refusal to act."  (Id.)

As to Dr. Saukhla, plaintiff has failed to allege any facts showing how she played a role in denying, delaying, or interfering with plaintiff's medical care.  See Estelle, 429 U.S. at 107.  Plaintiff's amended complaint contains only one allegation related to Dr. Saukhla: that, on August 18, 2015, Dr. Saukhla changed plaintiff's morphine medication from prn "taken as needed" to "taken every evening," without plaintiff's knowledge.  (ECF No. 8 at 12.)  Plaintiff's allegations concerning the events of August 18, 2015, without more, fail to rise to the level of deliberate indifference.  Arguably, Dr. Saukhla did not provide plaintiff with the medical care plaintiff wanted—a prn "taken as needed" prescription.  However, a difference of opinion as to medical treatment does not constitute deliberate indifference.  See Toguchi, 391 F.3d at 1058.  The court will, however, grant leave to file a second amended complaint.

Plaintiff's allegations as to Dr. Ko and Baraceros, viewed in the light most favorable to him, could support a finding of deliberate indifference to plaintiff's serious medical needs.  See Anthony v. Dowdle, 853 F.2d 741, 743 (9th Cir. 1988) (in order to show deliberate indifference by defendants, the plaintiff must show defendants were aware of his injuries and denied plaintiff's requests for medical treatment).  Plaintiff has set forth specific facts that could support a finding that his chronic pain medication prescription was discontinued for non-medical reasons and that

Dr. Ko and Baraceros were aware of the seriousness of plaintiff's pain but denied, delayed, or interfered with his medical treatment. Plaintiff is cautioned, however, that a difference of opinion as to medical treatment does not constitute deliberate indifference. See Toguchi, 391 F.3d at 1058.

### C. Fourteenth Amendment Due Process Claims Against Defendants Baraceros, Dr. Ko, and Dr. Saukhla

Plaintiff's third claim for relief pursuant to the Fourteenth Amendment's Due Process Clause does not apply here as the Fourteenth Amendment generally applies to pretrial detainees. See Simmons v. Navajo Cnty., 609 F.3d 1011, 1017 (9th Cir. 2010) ("Although the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment's protection against cruel and unusual punishment, applies to pretrial detainees, we apply the same standards in both cases.") (internal citations omitted). This claim is redundant as the Eighth Amendment controls lack of medical care claims of prisoners. Plaintiff's third cause of action should therefore be dismissed.

## VI. Conclusion

For the reasons set forth above, plaintiff's motion for leave to amend (ECF No. 6) is denied as moot and plaintiff's amended complaint is dismissed, with leave to file a second amended complaint that meets the substantive legal requirements set forth herein.

If plaintiff chooses to file a second amended complaint, plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of plaintiff's federal constitutional or statutory rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). Also, the second amended complaint must allege in specific terms how each named defendant is involved. There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Furthermore, vague and conclusory allegations of official participation in civil rights violations are not sufficient. Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

////

In addition, plaintiff is informed that the court cannot refer to a prior pleading in order to make plaintiff's second amended complaint complete. Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. This requirement is because, as a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once plaintiff files a second amended complaint, the original pleading no longer serves any function in the case. Therefore, in a second amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's request for leave to proceed in forma pauperis is granted.

2. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). All fees shall be collected and paid in accordance with this court's order to the Director of the California Department of Corrections and Rehabilitation filed concurrently herewith.

3. Plaintiff's motion to amend is denied as moot;

4. Plaintiff's amended complaint is dismissed; and

5. Plaintiff is granted thirty days from the date of service of this order to file a second amended complaint that complies with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice; the second amended complaint must bear the docket number assigned this case and must be labeled "Second Amended Complaint"; plaintiff must file an original and two copies of the second amended complaint; failure to file a second amended complaint in accordance with this order will result in a recommendation that this action be dismissed.

Dated: November 16, 2016

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

elli1803.14am.new