UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN ELLIS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>L. BARACEROS, et al.,<br><br>　　　　　Defendants. | No. 2:16-cv-1083 JAM KJN P<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

I. Introduction

　　　　Plaintiff is a state prisoner, proceeding without counsel. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, and is proceeding in forma pauperis. Defendants' motion for summary judgment is before the court. As discussed below, defendants' motion should be granted on the grounds that plaintiff failed to exhaust administrative remedies as to his medical deliberate indifference claims against defendants Dr. Ko and Baraceros, and this action should proceed solely on plaintiff's retaliation claims against defendant Baraceros.

II. Background

　　　　Plaintiff, a 56-year-old paraplegic, suffers from degenerative joint disease and other serious ailments that cause him chronic pain, for which he has been prescribed morphine sulfate extended release for many years in accordance with Pain Management Guidelines. (ECF No. 12 at 11.) Plaintiff alleges that, in violation of the First Amendment, defendant Baraceros retaliated against

plaintiff for filing a grievance against Baraceros, based on detailed allegations set forth in the second amended complaint. (ECF No. 12.) Specifically, plaintiff alleges that defendant Baraceros allegedly and improperly cancelled plaintiff's morphine prescription in retaliation for plaintiff submitting inmate appeals complaining about defendant Baraceros' conduct at the California Medical Facility ("CMF"). Further, plaintiff alleges that, in violation of the Eighth Amendment, defendants Baraceros and Dr. Ko were deliberately indifferent to plaintiff's serious medical needs by causing the cancellation of plaintiff's chronic pain medications.

On March 14, 2017, the undersigned found that plaintiff's allegations state potentially cognizable First and Eighth Amendment claims for relief. (ECF No. 13.)

On January 25, 2018, defendants filed a motion for summary judgment on the grounds that plaintiff failed to exhaust his administrative remedies as to (1) his medical deliberate indifference and retaliation claims against defendant Ko;[1] and (2) his medical deliberate indifference claim against defendant Baraceros.[2] (ECF No. 33.) On February 22, 2018, plaintiff filed an opposition, a separate statement of undisputed and disputed facts, and a request for judicial notice. (ECF Nos. 36-38.) On March 2, 2018, respondent filed a reply to the opposition, and a reply to the separate statement of facts. (ECF Nos. 39-40.)

III. Legal Standard for Summary Judgment

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil Procedure 56 is met. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

////

---

[1] In their motion, defendants construed plaintiff's pleading as alleging a retaliation claim against Dr. Ko. The court did not identify such claim in its screening order. (ECF No. 13 at 1.) In his opposition, plaintiff confirmed that he did not allege that Dr. Ko retaliated against plaintiff. (ECF No. 36 at 14.) Therefore, the undersigned does not address defendants' arguments addressing retaliation claims.

[2] Defendants did not move for summary judgment on plaintiff's retaliation claim against defendant Baraceros because it is undisputed that plaintiff exhausted his administrative remedies as to such claim.

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c)). "Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return

a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1575 (9th Cir. 1990).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587; Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

By contemporaneous notice provided on January 25, 2018 (ECF No. 33-6), plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (*en banc*); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

////

IV. Undisputed Facts[3] ("UDF")

1. Between September 10, 2014, and May 20, 2016 ("the relevant period" in plaintiff's complaint), plaintiff Benjamin Ellis was a prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR") at CMF in Vacaville, California.

2. During the relevant period, defendant Ko was employed by CDCR as a medical doctor at CMF before transferring to CSP-Solano.

3. During the relevant period, defendant Baraceros was employed by CDCR as a Licensed Vocational Nurse ("LVN") at CMF.

4. During the relevant period, plaintiff submitted one health care appeal, log number CMF-SC-15000675, that was accepted, adjudicated, and exhausted through all three levels of review. (ECF No. 33-4 at 2-8; 10-21.)

5. In health care appeal, log number CMF-SC-15000675, plaintiff alleged that defendant Baraceros retaliated against him after he threatened to submit a staff complaint against her for falsely accusing plaintiff of hiding his medications which led to custody staff searching Plaintiff's cell. (ECF No. 33-4 at 14-16.)

6. Plaintiff did not name or reasonably identify defendant Ko, or any other medical doctor at CMF as a party or witness. Plaintiff also did not raise any allegations that defendants Baraceros, Ko, or any other member of the medical staff at CMF, cancelled plaintiff's morphine medication. (ECF No. 33-4 at 14-16.)

7. Plaintiff also did not raise any allegations that defendants Baraceros, Ko, or any other member of the medical staff at CMF, cancelled plaintiff's morphine medication. (Id.)

8. Plaintiff also submitted seven health care appeals for First and/or Second Level review, but not Third Level review, during the relevant period, including log numbers: (1) CMF-HC-16041731 (ECF No. 33-4 at 25-33), (2) CMF-HC-15041522 (ECF No. 33-4 at 39-45), (3) CMF-SC-15000693 (ECF No. 33-4 at 47-62), (4) CMF-HC-16041883 (ECF No. 33-5 at 2-4), (5) CMF-

---
[3] For purposes of summary judgment, the undersigned finds these facts are undisputed, unless otherwise indicated.

5

HC-15040483 (ECF No. 33-5 at 10-15), (6) CMF-HC-15040798 (ECF No. 33-5 at 17-24), and (7) CMF-HC-15040609 (ECF No. 33-5 at 31-35).[4] (ECF Nos. 33-3 at 3-4, ¶ 9; 33-4; 33-5.)

9. Defendants contend that three of those seven appeals included allegations concerning plaintiff's morphine prescription. (ECF No. 40 at 4.) Plaintiff contends six of his appeals include allegations of plaintiff's morphine: (1) CMF-HC-15000675 (ECF No. 33-4 at 2-8; 10-21); (2) CMF-HC-16041731 (ECF No. 33-4 at 25-33); (3) CMF-HC-15041522 (ECF No. 33-4 at 41-45); (4) CMF-HC-15000693 (ECF No. 33-4 at 47-62); (5) CMF-HC-16041883 (ECF No. 33-5 at 2-4) (but outside relevant period); and (6) CMF-HC-15040798 (ECF No. 33-5 at 17-24). (ECF No. 37 at 3.)

10. In the first health care appeal, log number CMF-HC-16041731, signed December 30, 2015, plaintiff confirmed that Dr. Ko prescribed plaintiff morphine as PRN (take as needed), but that for unknown reasons, a non-defendant medical doctor, Dr. Saukhla, changed the prescription from PRN to take every evening.[5] (ECF No. 33-4 at 28-29.) Plaintiff requested to know what reason Dr. Saukhla had for changing the prescription from PRN, why Dr. Saukhla or LVN Baraceros did not inform plaintiff of such changes, and "why the discontinues." (ECF No. 33-4 at 28.)[6]

---

[4] Defendants claim this list also includes CMF-HC-15040434; plaintiff claims he never filed a Health Care appeal CMF-HC-15040434. (ECF No. 37 at 3.) Plaintiff concedes that appeals CMF-HC-16041883 and CMF-HC-15040609 fall outside the relevant period and should be disregarded. (ECF No. 36 at 19:4.)

[5] In this appeal, plaintiff claims Dr. Saukhla changed the prescription from PRN to "MSER." (ECF No. 33-4 at 25-33.) However, "MSER" is the medical acronym for Morphine Sulfate Extended-Release. The first level response confirms that the change was from PRN to "every evening." (ECF No. 33-4 at 31.)

[6] On February 19, 2016, the First Level Response identified two issues: (1) disagreement with treatment: why prescription changed from PRN to every night; and (2) why medication was discontinued. (ECF No. 33-4 at 31.) The reviewer noted that the prescription change from PRN to every evening on August 18, 2015, was "due to clerical error," and that the morphine prescription was stopped on October 27, 2015, due to violation of plaintiff's pain contract, refusal of "spot urine toxicology screening." (ECF No. 33-4 at 31.) Plaintiff expressed his dissatisfaction with this response, stating that he did not challenge the 10/27/15 cancellation, but rather why Dr. Saukhla had plaintiff's medical chart for two weeks, and why did Dr. Saukhla discontinue plaintiff's medication on 8/19/15 and 8/27/15, when Dr. Ko was plaintiff's primary care physician. (ECF No. 33-4 at 30.)

11. On April 4, 2016, health care appeal, log number CMF-HC-16041731, was partially granted at the Second Level of review after prison officials reviewed plaintiff's medications. (ECF No. 36 at 37-38.) However, in that health care appeal, plaintiff did not allege that defendant Ko, or any other medical doctor, at CMF retaliated against him and/or took inappropriate actions to cancel plaintiff's morphine prescription. (ECF Nos. 33-4 at 25-33; 36 at 37-38.)

12. In the second health care appeal, log number CMF-HC-15041522, plaintiff requested a renewal of his morphine prescription. However, in that health care appeal, plaintiff did not allege that defendants Ko, Baraceros, or any other member of the medical staff at CMF, took inappropriate actions to cancel plaintiff's morphine prescription. (ECF No. 33-4 at 38-40.)

13. On March 3, 2016, health care appeal, log number CMF-HC-15041522, was granted at the Second Level of review after the Second Level Examiner found that plaintiff's primary care physician had already renewed plaintiff's morphine prescription. (ECF No. 33-4 at 35-36.)[7]

14. In the third health care appeal, log number CMF-SC-15000693, plaintiff alleged constant harassment from the nursing staff and submitted a staff complaint specifically against defendant Baraceros for retaliation. (ECF No. 33-4 at 50-51.)

15. In health care appeal, log number CMF-SC-15000693, plaintiff alleged that Baraceros emailed defendant Ko to report that plaintiff was not taking his morphine medication as prescribed. However, in that health care appeal, plaintiff did not allege that defendant Ko, and/or any other medical doctor at CMF, took inappropriate actions to cancel his morphine prescription. (ECF No. 33-4 at 47-62.)

16. Other than the above-mentioned health care appeals, plaintiff did not submit any additional health care appeals that were accepted and adjudicated at the First and/or Second-Levels of Review at CMF. (ECF No. 33-3 at 5, ¶ 13.)

17. Other than the above-mentioned health care appeals, no other health care appeals submitted by plaintiff were accepted and adjudicated at the Third-Level during the relevant period. (ECF No. 33-3 at 5, ¶ 14.)

---

[7] Plaintiff disputes this fact by citing to the denial of the first level appeal and arguing the merits of his claim, but his arguments do not change the outcome of the second level appeal.

1    18. Plaintiff did not submit a health care appeal alleging that any of his health care appeals were improperly canceled by the CMF health care Appeals Office, or by any individual Appeals Coordinator. (ECF No. 33-3 at 5, ¶ 15.)[8]

19. In health care appeal, log number CMF-SC-15000693, plaintiff alleged that Baraceros interfered with plaintiff's medication by emailing defendant Dr. Ko to report that plaintiff was not taking his morphine medication for two weeks. (ECF No. 33-4 at 50-51.) However, in that health care appeal, plaintiff did not allege that defendant Ko, and/or any other medical doctor at CMF, took inappropriate actions to cancel his morphine prescription. (ECF Nos. 33-3 at 5, ¶ 14; 33-4 at 47-62.)

V. Exhaustion of Administrative Remedies

A. Exhaustion Standards

The Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a), requires a prisoner challenging prison conditions to exhaust available administrative remedies before filing suit. McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002); 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). Exhaustion is a precondition to suit; exhaustion during the pendency of the litigation is insufficient. McKinney, 311 F.3d at 1199-1200. This requirement promotes the PLRA's goal of efficiency by: "(1) 'giv[ing] prisoners an effective incentive to make full use of the prison grievance process'; (2) reducing prisoner suits as some prisoners are 'persuaded by the proceedings not to file an action in federal court'; and (3) improving the quality of any remaining prisoner suits 'because proper exhaustion often results in the creation of an administrative record that is helpful to the court.'" Nunez v. Duncan, 591 F.3d 1217, 1226 (9th Cir. 2010) (quoting Woodford v. Ngo, 548 U.S. 81, 94-95 (2006)).

////

---

[8] Plaintiff disputes this fact by citing appeals that were rejected, and which he subsequently re-submitted. But plaintiff points to no appeal where he claimed a rejected health care appeal had been improperly cancelled.

8

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." Woodford, 548 U.S. at 90. These rules are defined by the prison grievance process itself, not by the PLRA. Jones v. Bock, 549 U.S. 199, 218 (2007). "[A] prisoner must 'complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court.'" Harvey v. Jordan, 605 F.3d 681, 683 (9th Cir. 2010) (quoting Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009)). In California, a grievance must be timely appealed through the third level of review to complete the administrative review process. Harvey, 605 F.3d at 683; Cal. Code Regs. tit. 15, § 3084.1(b). The State of California provides its inmates and parolees the right to administratively appeal ''any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare.'' Cal. Code Regs. tit. 15, § 3084.1(a). In order to exhaust available administrative remedies, a prisoner must proceed through three formal levels of appeal and receive a decision from the Secretary of the CDCR or his designee. Id. § 3084.1(b), § 3084.7(d)(3).

The amount of detail in an administrative grievance necessary to properly exhaust a claim is determined by the prison's applicable grievance procedures. Jones, 549 U.S. at 218; see also Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010) (''To provide adequate notice, the prisoner need only provide the level of detail required by the prison's regulations''). California prisoners are required to lodge their administrative complaint on a CDCR-602 form (or a CDCR-602 HC form for a health-care matter). The level of specificity required in the appeal is described in a regulation:

> The inmate or parolee shall list all staff member(s) involved and shall describe their involvement in the issue. To assist in the identification of staff members, the inmate or parolee shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal. If the inmate or parolee does not have the requested identifying information about the staff member(s), he or she shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question. [¶] The inmate or parolee shall state all facts known and available to him/her regarding the issue being appealed at the time of submitting the Inmate/Parolee Appeal form, and if needed, the Inmate/Parolee Appeal Form Attachment.

Cal. Code Regs. tit. 15, § 3084.2(a)(3-4).[9] An inmate has thirty calendar days to submit his or her appeal from the occurrence of the event or decision being appealed, or "upon first having knowledge of the action or decision being appealed." Cal. Code Regs. tit. 15, § 3084.8(b).

However, the Ninth Circuit has held that "a prisoner exhausts such administrative remedies as are available . . . under the PLRA despite failing to comply with a procedural rule if prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process." Reyes v. Smith, 810 F.3d 654, 658 (9th Cir. 2016); see also Franklin v. Foulk, 2017 WL 784894, at *4-5 (E.D. Cal. Mar. 1, 2017); Franklin v. Lewis, 2016 WL 4761081, at *6 (N.D. Cal. Sept. 13, 2016). Thus, a prisoner's failure to list all staff members involved in an incident in his inmate grievance, or to fully describe the involvement of staff members in the incident, will not necessarily preclude his exhaustion of administrative remedies. Reyes, 810 F.3d at 958; Foulk, 2017 WL 784894, at *4 ("[T]he court in Reyes found that even though the plaintiff's grievance failed to name two physicians on the prison's three-person pain committee, prison officials were put on notice of the nature of the wrong alleged in the suit -- that the plaintiff was wrongfully denied pain medication."); Lewis, 2016 WL 4761081, at *6 ("[T]o the extent Defendants argue that Plaintiff failed to comply with a procedural requirement by not naming Defendants in [his appeal], this deficiency is not necessarily fatal to Plaintiff's claim pursuant to Reyes"); Grigsby v. Munguia, 2016 WL 900197, at *11-12 (E.D. Cal. Mar. 9, 2016) (appeal pursued through all three levels of review challenged the excessive force incident, and prison officials aware of defendant Baker's

---

[9] California prison regulations governing inmate grievances were revised on January 28, 2011,. Cal. Code Regs. tit. 15, § 3084.7. Several Ninth Circuit cases refer to California prisoners' grievance procedures as not specifying the level of detail necessary and instead requiring only that the grievance ''describe the problem and the action requested.'' See Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (quoting Cal. Code Regs. tit. 15, § 3084.2); Sapp, 623 F.3d at 824 (''California regulations require only that an inmate 'describe the problem and the action requested.' Cal. Code Regs. tit. 15, § 3084.2(a)''); Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009) (when prison or jail's procedures do not specify the requisite level of detail, '''a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought'''). Such cases are distinguishable because they did not address the regulation as it existed at the time of the events complained of in plaintiff's complaint. Whatever the former requirements may have been, in California since January 28, 2011, the operative regulation set forth above requires specificity in administrative appeals.

10

involvement); see also Bulkin v. Ochoa, 2016 WL 1267265, at *1-2 (E.D. Cal. Mar. 31, 2016) (declined to dismiss reckless endangerment claims based on failure to name two defendants in appeal because prison officials addressed the claim on the merits, were alerted to the problem, knew the actors involved, and were given an opportunity to rectify the alleged wrong); see also McClure v. Chen, 246 F.Supp.3d 1286, 1292-94 (E.D. Cal. Mar. 28, 2017) (claim that prison officials failed to provide adequate medical attention for an eye injury suffered after falling from his bunk, the same as raised in his federal complaint and pursued until the appeals were granted, was sufficient to exhaust remedies).

Nonetheless, for administrative remedies to be exhausted by California prisoners as to defendants who were not identified in the inmate grievance, there must be a "sufficient connection" between the claim in the appeal and the unidentified defendants such that prison officials can be said to have had "notice of the alleged deprivation" and an "opportunity to resolve it." Reyes, 810 F.3d at 959 (finding that plaintiff had satisfied PLRA exhaustion requirements as to two prison doctors despite not having identified them in his inmate appeals because there was a sufficient connection between plaintiff's appeal based on inadequate pain management, and the doctors, who served on the prison committee that had denied plaintiff medication); McClure, 246 F.Supp 3d at 1293-94 (remedies exhausted even though doctors not named in appeal; prison was placed on notice) ).

An inmate must exhaust available remedies, but is not required to exhaust unavailable remedies. Albino v. Baca, 747 F.3d 1162, 1171 (9th Cir. 2014) (*en banc*). "To be available, a remedy must be available 'as a practical matter'; it must be 'capable of use; at hand.'" Id. (quoting Brown v. Valoff, 422 F.3d 926, 936-37 (9th Cir. 2005)). "Accordingly, an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" Ross v. Blake, 136 S. Ct. 1850, 1858 (2016) (quoting Booth v. Churner, 532 U.S. 731, 738 (2001)).

Failure to exhaust under the PLRA is "an affirmative defense the defendant must plead and prove." Jones, 549 U.S. at 204. It is the defendant's burden to prove that there was an available administrative remedy, and that the prisoner failed to exhaust that remedy. Albino, 747

F.3d at 1172. "Once the defendant has carried that burden, the prisoner has the burden of production. That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. If the court concludes that the prisoner failed to exhaust available administrative remedies, the proper remedy is dismissal without prejudice. See Jones, 549 U.S. at 223-24; Lira v. Herrera, 427 F.3d 1164, 1175-76 (9th Cir. 2005).

B. Discussion

Plaintiff argues that he exhausted his medical deliberate indifference claims against defendants Dr. Ko and Baraceros by filing health care appeals, log numbers CMF-HC-15041522 and CMF-SC-1500675, respectively.[10] Plaintiff also argues that health care appeal, log numbers CMF-SC-15000693 and CMF-HC-15040798 complained about defendant Baraceros' deliberate indifference to plaintiff's medical needs when she took steps to interfere with his medication, and appears to argue that such appeals, taken together with CMF-SC-1500675, put prison staff on notice of plaintiff's medical claims against Baraceros. (ECF No. 36 at 19.)

1. Did CMF-HC-15041522 Exhaust Medical Claims as to Dr. Ko?

Defendants argue that appeal, log number CMF-HC-15041522, cannot exhaust plaintiff's deliberate indifference claim because plaintiff simply requested a renewal of his morphine prescription, plaintiff received the renewal of morphine, and plaintiff failed to allege that Dr. Ko or any other medical doctor at CMF took inappropriate action to cancel his morphine prescription. (ECF No. 39 at 3-4.) Defendants argue that because it is undisputed that plaintiff failed to raise his deliberate indifference claims in the appeal, the Reyes exception cannot apply. (ECF No. 39 at 4.)

It is undisputed that in appeal, log number CMF-HC-15041522, signed November 2, 2015, plaintiff requested a renewal of his morphine prescription, and did not allege that defendant

////

---

[10] Plaintiff conceded that he did not raise any medical deliberate indifference allegations against Dr. Ko in health care appeal, log number CMF-SC-1500675. (ECF No. 36 at 12:16-18.)

12

Dr. Ko or any other member of the medical staff at CMF took inappropriate actions to cancel plaintiff's morphine prescription. (UDF 12.) Specifically, in his appeal, plaintiff wrote:

> Discontinuation of medication, [without] proper notification.
>
> For months I've been receiving morphine, PRN, one pill at night for pain. However, I was never notified said meds were no longer PRN which resulted in said medication being discontinued. Two days after being discontinued, said medication was renewed. Into the second day of the renewed meds, Ellis missed day two (2) which resulted in said meds, again, being discontinued.

(ECF No. 33-4 at 38, 40.) Plaintiff noted he takes 15 mg of morphine at night for pain. Because plaintiff is a wheelchair-bound paraplegic, he gets up at 2:30 a.m. in order to report to work at 4:00 a.m., and the lack of morphine prevents him from getting rest due to the pain he sustains at night. (ECF No. 33-4 at 40.) He also asked the following questions: "Isn't it policy for a patient to be notified by her/his nurse when changes are made to his/or her medication, such as, no longer being PRN?" and "Isn't it policy that a patient can't miss 50q or more of medication in a seven (7) day period (and not just this one (1) day after being prescribed the medication)? (ECF No. 33-4 at 40.)

Prior to Reyes, this appeal would be insufficient as to Dr. Ko, because plaintiff did not name Dr. Ko or "list all staff member(s) involved" as required by Cal. Code Regs., tit. 15, § 3084.2. But with the decision in Reyes, the Ninth Circuit now no longer requires such strict adherence to procedural rules under all circumstances. Rather, "a prisoner exhausts such administrative remedies as are available under the PLRA despite failing to comply with a procedural rule if prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process." Reyes, 810 F.3d at 658.

Despite his failure to name Dr. Ko, plaintiff did identify his issue as the "discontinuation of medication," and identified that his prescription for morphine had been changed from PRN ("as needed"), without notice. In this appeal, plaintiff asks whether the nurse is responsible to notify plaintiff of medication changes, but only a doctor can discontinue, stop, cancel, prescribe, or make changes to a prescription to morphine. (ECF No. 33-4 at 40.) Plaintiff explained that

13

without the .15 mg of morphine at night, it was difficult for him to rest up for work the next day due to the pain he suffers at night. (ECF No. 33-4 at 40.) Moreover, in the first level response, the reviewer noted that plaintiff disputed the reasons why the prescription had been stopped, and the reviewer discussed the reasons Dr. Ko stopped plaintiff's prescription. (ECF No. 33-4 at 41.) In the request for second level review, plaintiff denied telling Dr. Ko to stop all medications rather than submit to a urine test, and reiterated that Dr. Ko's nurse did not explain to plaintiff the protocol for urine tests. (ECF No. 33-4 at 39.) Plaintiff wrote that although the medication was renewed on October 28, 2015, it was discontinued again on October 29, 2015. (Id.) At the second level of review, the appeal was granted because plaintiff's prescription to morphine had been renewed, which obviated plaintiff's need to pursue an appeal to the third level of review, because no further relief was available.

The undersigned concludes that Reyes applies because at each level of review, prison officials addressed plaintiff's claim on the merits, thereby voiding Dr. Ko's ability to later pursue a procedural bar against this claim. See Reyes, 810 F.3d at 657 ("[W]hen prison officials address the merits of a prisoner's grievance instead of enforcing a procedural bar, the state's interests in administrative exhaustion have been served."). The appeal responses demonstrate that prison officials were alerted to the problem, knew of the actor involved – Dr. Ko – and were given the opportunity to rectify the alleged wrong through internal means, and it was rectified. See id. at 659 ("The grievance process is only required to 'alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued.'") (quoting Jones, 549 U.S. at 219). The reviewing official did not reject plaintiff's request for second level review based on adding factual allegations; rather, the reviewer addressed and rectified the problem. Because the intent of the PLRA was fulfilled, id. at 657, the undersigned finds that defendant Dr. Ko cannot now seek dismissal of plaintiff's claim based on his failure to name Dr. Ko, or plaintiff's failure to articulate his allegations in the appeal as "Dr. Ko inappropriately cancelled the morphine prescription."

////
////

14

2. Did CMF-SC-1500675 Exhaust Medical Claims as to Baraceros?

Plaintiff argues that this appeal exhausts his medical claim as to defendant Baraceros because plaintiff alleged that Baraceros falsely accused plaintiff of hiding his medications, engaged in a campaign of harassment, and unprofessional conduct when handling plaintiff's medications. (ECF No. 36 at 13.) Plaintiff argues that he did not have to use the words "deliberate indifference" in his appeal.

Defendants counter that plaintiff makes contradictory assertions in his opposition. (ECF No. 39 at 2.) Plaintiff first states that health care appeal, log number CMF-SC-1500675, was submitted on [A]pril 30, 2015, against Baraceros, only, for retaliation and harassment . . . Plaintiff never stated nowhere in his complaint [alleging] Baraceros discontinued Ellis' meds, but rather, defendant Baraceros [kept] interfering with Ellis meds." (ECF No. 36 at 12:15-21.) Defendants argue that plaintiff submitted this appeal because he complained that Baraceros retaliated against him for submitting previous inmate appeals, not because she took any inappropriate actions to cancel his morphine prescription. (ECF No. 39 at 2.) Further, defendants contend that plaintiff's allegations in such appeal are consistent with his retaliation claim, not a medical deliberate indifference claim, because plaintiff did not include an allegation that Baraceros took any action to improperly cancel plaintiff's morphine prescription.

In his appeal, log number CMF-SC-1500675, plaintiff identified the subject of his complaint as "complaint against staff for retaliation/harassment (nurse)." (ECF No. 33-4 at 14.) in his explanation of the issue, he stated, "I exercised my First Amendment right when I told Baraceros (LVN) I will file a 602 appeal against her if she continues harassing me by falsely accusing me of hiding my medication, although she observed me taking meds, drinking water, etc." (ECF No. 33-4 at 15-16.) Plaintiff then set forth various ways he alleged Baraceros retaliated against and harassed plaintiff, including issuing him the wrong medication. (ECF No. 33-4 at 16.) The second and third level appeal responses addressed plaintiff's appeal solely as a retaliation claim. (ECF No. 33-4 at 10, 18.) In his request for second level review, plaintiff did not object to the appeal being addressed solely in the context of retaliation (ECF No. 33-4 at 17), and nowhere in his appeal did plaintiff allege that defendant Baraceros denied plaintiff his

morphine medication by deliberately passing his cell, or caused plaintiff's morphine prescription to be changed, discontinued, or cancelled inappropriately, as plaintiff alleges in the operative pleading (ECF No. 12 at 13, 15-17). Although plaintiff was not required to use the legal terms "deliberate indifference" in his appeal, he was required to put prison officials on notice of the factual allegations underlying his claim. Because plaintiff included no specific allegations as to defendant Baraceros' alleged interference with plaintiff's prescription to morphine, as alleged herein, prison officials were not put on notice that defendant Baraceros was being deliberately indifferent to plaintiff's serious medical needs by her actions. Rather, prison officials treated the appeal as a complaint that defendant Baraceros was retaliating against plaintiff based on his filing of appeals against her in violation of the First Amendment, as he expressly invoked in his appeal. Therefore, the undersigned finds that appeal, log number CMF-SC-1500675, did not exhaust plaintiff's medical deliberate indifference claims against defendant Baraceros.

### 3. Did CMF-SC-15000693 Exhaust Medical Claims as to Baraceros?[11]

Plaintiff argues that he did raise allegations concerning his morphine prescription in appeal, log number CMF-SC-15000693. (ECF No. 36 at 18.) Defendants counter that it is undisputed that plaintiff failed to submit such health care appeal to the third level of review. (ECF No. 39 at 5.) Because plaintiff failed to properly exhaust such appeal, defendants argue that plaintiff's medical deliberate indifference claim against defendant Baraceros should be dismissed as unexhausted.

It is undisputed that in this appeal, plaintiff alleged constant harassment by nursing staff, a staff complaint specifically against Baraceros for retaliation, and also alleged that Baraceros emailed Dr. Ko to report plaintiff was not taking his morphine as prescribed. (UDF 14, 15.) On February 11, 2016, a second level appeal response issued, but plaintiff did not seek a third level review. (ECF No. 33-4 at 47-49.) Although the second level response indicated that plaintiff's appeal was partially granted in that an appeal inquiry into the allegations was conducted, plaintiff was also informed that staff personnel matters are confidential, but that allegations of staff

---

[11] In this appeal, plaintiff did not allege that defendant Ko or any other medical doctor at CMF took inappropriate actions to cancel his morphine prescription. (ECF No. 33-4 at 47-62.)

misconduct do not restrict the availability of further relief through the appeals process. Therefore, plaintiff was instructed to submit the staff complaint appeal through all three levels of review if plaintiff wished to appeal the decision. He was also informed that a decision at the third level of review would exhaust his administrative remedies. (ECF No. 33-4 at 48.) In plaintiff's opposition, plaintiff did not address why he failed to pursue this appeal to the third level, or otherwise argue that he should be excused from exhausting appeal, log number CMF-SC-15000693.

        4. <u>Did CMF-HC-15040798 Exhaust Medical Claims as to Baraceros?</u>

Plaintiff argues that in appeal, log number CMF-HC-15040798, he complained about defendant Baraceros' deliberate indifference to plaintiff's serious medical needs when she took steps to interfere with his medication. (ECF No. 36 at 19.) Defendants counter that this appeal is not relevant because plaintiff complained that Baraceros did not allow plaintiff to observe her preparing his medications during her medication pass rotations. (ECF No. 39 at 5.)

In this appeal, plaintiff explained his issue as "Nurse Baraceros (LVN) continues to refuse to come directly to my cell door . . . so I can observe her preparing my medication." (ECF No. 36 at 74.) Plaintiff also complained that Baraceros held the medicine cup by the rim and not the side. Review of the entire appeal confirms defendants' position that plaintiff raised no claims relevant to the instant allegations against defendant Baraceros. Moreover, plaintiff failed to pursue this appeal to the third level of review. (ECF No. 36 at 73.)

Because appeal, log number CMF-HC-15040798, included none of the factual allegations plaintiff raises in the instant action, it cannot serve to exhaust plaintiff's medical deliberate indifference claims against defendant Baraceros.

Finally, plaintiff appears to argue that prison officials were put on notice of his medical deliberate indifference allegations against defendant Baraceros because of the factual allegations set forth in appeals CMF-SC-15000693 and CMF-HC-15040798, when read together with his appeal CMF-SC-1500675. (ECF No. 36 at 19.) However, plaintiff cites no legal authority for such theory, and the court is unaware of one. Rather, as set forth above, each inmate appeal is

////

reviewed individually to determine whether the prisoner exhausted his claims raised in the civil rights pleading filed in federal court.

VI. Conclusion

The undersigned finds that plaintiff failed to exhaust his administrative remedies as to his medical deliberate indifference claim against defendant Baraceros, but not as to defendant Dr. Ko. Under the PLRA, plaintiff's failure to pursue and exhaust his administrative remedies requires dismissal of plaintiff's medical deliberate indifference claim against defendant Baraceros without prejudice. If these findings and recommendations are adopted, this action will proceed on plaintiff's retaliation claims against defendant Baraceros, and plaintiff's medical deliberate indifference claims against defendant Dr. Ko.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment (ECF No. 33) be granted as to plaintiff's medical deliberate indifference claims against defendant Baraceros, and such claims be dismissed without prejudice;

2. Defendants' motion for summary judgment as to plaintiff's medical deliberate indifference claims against defendant Dr. Ko (ECF No. 33) be denied; and

3. This action be remanded to the undersigned for further scheduling.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: June 19, 2018

/cw/elli1083.msj.fte

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

18